IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| JOHN W. MACHIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C/A NO. 3:12-CV-2675-JFA |
| | ) | |
| CARUS CORPORATION, and THE ANDERSONS, | ) | |
| f/k/a GOLDEN EAGLE PRODUCTS, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT CARUS CORPORATION'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT, DAVID DORRITY

COMES NOW Defendant Carus Corporation ("Carus") and moves to exclude or limit the proposed testimony of Plaintiff's expert, Mr. David Dorrity. ("Dorrity"). Dorrity's opinion testimony does not pass muster under Fed. R. Evid. 702 and should be excluded.[1]

### I. MR. DORRITY'S PROPOSED TESTIMONY

Mr. Dorrity is Plaintiff's retained "transportation safety" expert. (Dorrity Dep. at 4; Dorrity Dep. Ex. 2 (Dorrity's Expert Report) at 2-3.) His specific expertise is in "trucking safety," and his primary experience is in investigating trucking accidents. (Dorrity Dep. at 10; Dorrity Dep. Ex. 2 at 2.) He has no prior experience with the chemical manufacturing industry. (Dorrity Dep. at 25, 28.)

Mr. Dorrity has opined: (1) Carus and The Andersons are "inseparable" entities with regard to their legal duties with respect to selecting a motor carrier to deliver TotalOx (id. at 18);

---

[1] Codefendant The Andersons has filed a motion to exclude Mr. Dorrity which is presently pending. (See doc. no. 98.) As Dorrity has proffered opinions which pertain solely to Carus, Carus is filing the instant motion in an abundance of caution. Carus herein **ADOPTS** and incorporates by reference the arguments raised in The Anderson's motion to exclude Dorrity to the extent those arguments apply equally to both Defendants.

1

(2) Carus had ownership and "control" over the TotalOx shipment until it was unloaded[2] (id. at 18, 47); (3) Carus, which had "no knowledge" of The Anderson's selection of Fetter to ship TotalOx, should have controlled the selection[3] of Fetter and investigated Fetter's safety record[4] before allowing The Anderson's to hire Fetter (id. at 38, 55, 84); (4) Carus failed to "pay attention" to information regarding Fetter's safety as a motor carrier because it was focused on profit (id. at 69, 75, 88); (5) Carus failed to ensure Fetter's driver was properly trained[5] (id. at 87,

---

[2]When confronted with the fact that the TotalOx was transported "FOB," meaning that ownership transferred to the Town of Lexington at the point of origin, Dorrity performed a mental shrug:

> Q: "[W]ould you agree that FOB also means that the buyer assumes the risk of transportation, he's entitled to route the shipment any way he desires and is responsible for filing claims of loss, for example, of the cargo because he owns it?"
> A: "I don't know that I agree with that yet. I don't have an opinion on that yet. You're pressing me when I haven't had an opportunity to analyze that."

(Id. at 121.)

[3]According to Dorrity, "judges and juries are beginning to decide that, yes, shippers are in charge of who they select," and there is a growing "trend" for shippers to investigate potential motor carriers prior to selecting them. (Id. at 57, 58-59.) Dorrity candidly admits no rule, law, or regulation supports his opinion that Carus had a duty to investigate Fetter and control the selection of a "safe" motor carrier. (Id. at 59.)

[4]Amazingly, Dorrity does not identify what safety information regarding Fetter Defendants should have discovered, and he admits he has no documents or research predating Plaintiff's accident which would demonstrate that Fetter had an inadequate safety record at the time Fetter was hired. (See id. at 93, 94, 115.) Rather, Dorrity's claim that Fetter was an "unsafe" carrier is based on data *postdating* the accident, which Dorrity admits was not available at the time Fetter was selected to haul TotalOx. (Id. at 92-93; see also id. at 99 (admitting that available data would not have alerted Carus as to Fetter's "ability to load or off-load TotalOx").)

[5]Dorrity admits no regulation, law, or rule required Carus to train the tanker-truck driver. (Id. at 120.)

100); and (6) Carus should have ensured Plaintiff was properly trained and wearing personal protective equipment[6] ("PPE"), *i.e.*, a respirator (id. at 116, 118-19, 122).

During his deposition, Dorrity repeatedly admitted that his opinions with respect to Carus's alleged legal duties are not supported by any rule, regulation, treatise, written industry standard, or any other objective (much less authoritative) source beyond an article in a trade magazine, a one-page interview with a lawyer, and an insurance company's memo advising that transportation brokers (not manufacturers) should research a carrier's safety statistics. (See id. at 56, 57, 58, 60-67, 71-72.) Rather, Dorrity's opinions rely entirely on his largely unspecified "experience."[7] (Id. at 57.)

None of these opinions withstand scrutiny under Rule 702.

## II. ARGUMENT

The familiar principles undergirding the Court's evaluation of expert testimony have been set forth elsewhere and need not be repeated at length here. It will suffice to say that "[i]f

---

[6]Of note, Dorrity concedes that the Town received the TotalOx MSDS and owed a duty to ensure that Plaintiff was properly trained and afforded PPE in accord with the risks identified on the MSDS. (Id.at 123-24.) Dorrity also admits that the Town understood that TotalOx posed a potential health risk if the product was misted and then inhaled. (Id. at 125.) Tellingly, Dorrity also admits the product poses no inhalation risk "if it's handled and reacts in the normal way." (Id.)

[7] In response to The Anderson's motion to exclude Dorrity, Plaintiff has provided a July 29, 2014 affidavit in which Dorrity states that he has "recently" reviewed a plethora of documents which purportedly support his opinions with respect to the "industry standards" of chemical manufacturers, a field with which he admittedly has no experience. As Dorrity plainly did not consider these documents in forming his opinions, the Court should not consider them in evaluating the reliability of Dorrity's opinion testimony. Furthermore, for the reasons explained in Carus's forthcoming Motion in Limine to Exclude Plaintiff's Supplemental Expert Disclosures, the Court should not allow Plaintiff's belated attempt to bolster his experts' opinions. At any rate, Dorrity's eleventh-hour resort to documents he never considered until faced with Defendants' pending motions for summary judgment and The Anderson's *Daubert* motion is too little, too late.

3

the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid.702 advisory committee's notes (2000).

Similarly, as Carus has explained elsewhere, the expert purporting to testify that a defendant has violated a standard of care or an industry practice must present actual, objective evidence of the supposed standard or practice.[8] See Hines v. Wyeth, Civ. A. No. 2:04-0690, 2011 U.S. Dist. LEXIS 74011, at *20-21 (S.D. W. Va. July 8, 2011) (explaining that expert who cannot "identify an established, objective industry standard" is offering testimony which is "speculative and not expert in nature"); Fulop v. Malev Hungarian Airlines, No. 00-Civ-1965, 2003 U.S. Dist. LEXIS 53, at *1-3, 2003 WL 42016 (S.D.N.Y. Jan. 3, 2003) (rejecting airline expert's proposed testimony on industry standards and practices regarding "in-flight medical emergencies" where expert could not point to actual experience or written standard, regulation, or guideline in the relevant industry which supported his opinion); Grdinich v. Bradlees, 187 F.R.D. 77, 81 (S.D.N.Y. 1999) (rejecting expert testimony regarding industry standards in part because of expert's inability to refer to written industry standards or guidelines). Dorrity reached his opinions regarding Carus's legal duties without reference to any objective industry standard or actual, established practice in the chemical manufacturing industry.

---

[8]In this regard, anecdotes regarding the expert's personal experience are no substitute for objective evidence of a generally accepted standard, practice, or custom in the pertinent industry. See Nistico v. Borgata Hotel Casino & Spa, Docket No. A-01-86-11T2, 2013 N.J. Super. Unpub. LEXIS 860, at *14-15, 2013 WL 1662954 (App. Div. Apr. 18, 2013.) An expert may not testify "to a standard that is personal to himself." Id.

4

In essence, Dorrity seeks to argue that Carus had a legal duty to control: (1) the TotalOx shipment, (2) the selection of the carrier, (3) the tanker-truck driver's training, and (4) the Town's training and provision of PPE to Plaintiff. These opinions are striking given Dorrity's admission that the Town could have prevented Plaintiff's exposure by providing Plaintiff with training and PPE in accord with the health risks posed by TotalOx mist—of which risks Dorrity admits Carus informed Town personnel. (See discussion *supra* at footnote 6.)

More importantly, Carus had no legal right to control the selection of the carrier, the driver's conduct, the Town's conduct, or Plaintiff's conduct. Nor did Carus have any legal authority to train Fetter, the driver, the Town, or Plaintiff.[9] Dorrity's opinions as to Carus's legal duty to control the activities of third parties come from thin air, without any objective support. As Carus has explained elsewhere, "[a] duty to prevent such negligence should not be imposed on one who does not control the tort-feasor." Cf Coyer v. Hyster Co., 158 A.D.2d 920, 921, 550 N.Y.S.2d 959, 961 (N.Y. App. Div. 4th Dep't 1990) (explaining that distributor could not be held liable based on negligent training where the plaintiff's employer retained control over its employees and the distributor had no way to select trainees or to "monitor a trainee's job performance").

---

[9]A manufacturer has no separate legal duty to "train" its customers' employees that is distinct from its general duty to provide adequate warning. See, e.g., Adeyinka v. Yankee Fiber Control, Inc., 564 F. Supp. 2d 265, 285-86 (S.D.N.Y. 2008); see also York v. Union Carbide Corp., 586 N.E.2d 861, 871 (Ind. Ct. App. 1992). As the Supreme Court of Minnesota has aptly explained:
> [T]here is no duty for suppliers or manufacturers to *train* users in the safe use of their product. Indeed, imposing a duty to train would be wholly unprecedented. Appellants cite no case-from any court-in which a supplier or manufacturer was obligated to provide training in order to discharge its duty to warn.

Glorvigen v. Cirrus Design Corp., 816 N.W.2d 572, 583 (Minn. 2012).

5

At bottom, Dorrity's proposed opinions, unsupported by any objective industry standard or established practice, are legal arguments as to what Carus's duties *should* be, not true expert opinion. "[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 561-62 (4th Cir. 2006). Likewise, expert testimony as to desirable aspirational, moral, ethical, or social standards—as distinguished from reliable testimony of existing standards of care and industry practices—is inadmissible. See In re Welding Fume Prods. Liab. Litig., 2010 U.S. Dist. LEXIS 146067, at *146 (N.D. Ohio June 4, 2010) (excluding moral/ethical "product stewardship" testimony). Dorrity's proposed testimony is neither reliable nor helpful to the factfinder.

### III. CONCLUSION

For all the foregoing reasons, as well as those explained in The Andersons's companion motion, Mr. Dorrity's proposed opinion testimony should be excluded.

This 4th day of September, 2014.

/s/ J. Arthur Davison_____
J. ARTHUR DAVISON
South Carolina District Court No. 455
SONJA R. TATE
South Carolina District Court No. 7625
Attorneys for Defendant Carus Corporation

OF COUNSEL:
FULCHER HAGLER LLP
Post Office Box 1477
Augusta, Georgia 30903-1477
adavison@fulcherlaw.com
state@fulcherlaw.com
(706) 724-0171

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2014, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a copy to all counsel of record in this matter as follows:

| | |
|---|---|
| Frederick I. Hall, III | Mark S. Barrow |
| THE RICK HALL LAW FIRM, LLC | Ryan C. Holt |
| PO Box 1898 | SWEENY, WINGATE & BARROW, PA |
| Lexington, SC 29071-1898 | PO Box 12129 |
| rick@sctrialattorneys.com | Columbia, SC 29211-2129 |
| | msb@swblaw.com |
| Attorney for Plaintiff | rch@swblaw.com |
| | |
| | Attorneys for Defendant The Andersons |

/s/ J. Arthur Davison
J. ARTHUR DAVISON