IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John William Machin,<br><br>     Plaintiff,<br><br>vs.<br><br>Carus Corporation,<br><br>     Defendant. | C/A No.: 3:12-02675-JFA<br><br><br>ORDER<br>FOR CERTIFICATION |

TO: THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF THE SOUTH CAROLINA SUPREME COURT

  This Court has determined that the above-captioned case involves questions of law of the State of South Carolina, which are most probably determinative of Plaintiff John William Machin's motion for a new trial, ECF No. 247, pending before this Court. There appears to be minimal controlling precedent in the decisions of the Supreme Court of the State of South Carolina concerning workers' compensation *coupled with* the South Carolina Contribution Among Tortfeasors Act, S.C. CODE ANN. § 15-38-15, effective July 1, 2005. Accordingly, pursuant to South Carolina Appellate Court Rule 244, the United States District Court hereby certifies the questions of law addressed below to the Supreme Court for instructions based on the following facts and procedural background:

INTRODUCTION

  Plaintiff, John William Machin, a resident of the County of Lexington, South Carolina and employee of the Town of Lexington (the "Town"), initiated this action seeking actual and punitive damages against Carus Corporation ("Carus"), The Andersons, Inc. f/k/a Golden Eagle Products, Inc. ("The Andersons"), Fetter & Sons Farms LLC ("Fetter & Sons"), and Terry J.

Weiser, allegedly emanating from a workplace injury on April 13, 2010. As a result, Plaintiff inhaled a substantial amount of the chemical, Totalox. This Court has diversity jurisdiction over this action because Carus, The Andersons, and Fetter & Sons, are all corporations with their formation and principal place of business outside of South Carolina. Additionally, Terry Weiser is a resident of a state other than South Carolina.

### BACKGROUND FACTS

Carus is an international company engaged in the creation and manufacture of chemical products for the municipal and industrial markets with a majority used in environmental applications. Carus uses varieties of the chemical, permanganate, to develop deodorizers that are marketed under a variety of trade names including Totalox. Totalox is an odor eliminator that provides a food source for the anaerobic bacteria in sewer systems and prevents the anaerobic bacteria from exhibiting or producing hydrogen sulfide.

Totalox has its own Material Safety Data Sheet ("MSDS") to communicate to users the applicable hazards, warnings, recommended personal protective equipment and product information. Totalox is a proprietary chemical whose formula was developed by Carus and includes the chemicals, sodium permanganate and calcium nitrate. Carus manufactures Totalox through a tolling arrangement, where one party—the toll producer or toller—performs a manufacturing process on the goods of another party—the owner. At the time of Plaintiff's incident, Carus's toller was The Andersons.[1] The Andersons accepted delivery of permanganate from Carus and blended it with its own stock of calcium nitrate and water.

---

[1] At the time of the incident, Golden Eagle Products, Inc. was a division of New Eezy-Gro, Inc., an Ohio based corporation. Post incident, The Andersons acquired New Eezy-Gro, Inc. in a stock purchase.

The Town, in order to transport sewage from far-reaching areas of its water district, uses more than seventy-five lift stations that pump wastewater from low-lying areas to higher elevations. To service its growing northeastern edge, the Town constructed the Millstream regional station near Twelve Mile Creek in 1999. Wastewater is pumped from smaller lift stations to Millstream. Sewage passes through Millstream and into the nearby City of Cayce, home of the Joint Municipal Water & Sewer Commission plant, which provides a single location for water treatment for several Lexington County municipalities.

In 2003 or earlier, the Town contracted with Carus to provide deodorizers for its wastewater system. Initially branded as ECONOX, the chemicals were delivered by truck in 275-gallon portable totes. Like the MSDS, the totes' labels contained warnings to avoid breathing a mist of the product, and recommended the use of a respirator. Each tote had a circular lid on top for venting and a valve on the bottom for dispensing. In the early years of the Millstream station, only a few totes were necessary for deodorization. The totes were situated on a concrete slab surrounded by gravel. The deodorizer was injected into the sewer main by way of a feed pump leading from the totes. As each tote was emptied, another full tote was set in its place.

As the Town grew, so did its use of the Millstream lift station and use of the Cayce-based water treatment plant. The City of Cayce became concerned with odor levels, as well as corrosion caused by the increased sewage from Millstream, and mandated further reduction of hydrogen sulfide. The Cayce mandate compelled both an increase in the Town's deodorizer order and a larger on-site container system at Millstream. In light of this growth and conversations with Town employees, Carus issued a proposal in September 2009 for the

installation of a large-volume tank to hold the Totalox. The Town did not order the tank, opting to design and construct its own in-house system instead.

In late 2009, Town utility employees began work on the in-house container system to hold the increased volume of Totalox—the three totes of Totalox became fifteen. The Town used PVC pipes and fittings to tie together fifteen portable totes into a container system for Totalox. The new configuration allowed tanker trucks to deliver Totalox directly to Millstream.[2] Once the tanker attached its line to the tote configuration, chemical would offload and Town employees would close the valve on each tote as it filled. Employees would continue closing valves until all fifteen totes were filled or the tanker was empty.

To facilitate delivery of its products, Carus provided The Andersons with the identity of the Carus customer who was to receive each order of Totalox. On occasion, The Andersons used its own tanker trucks to transport orders of Totalox to Carus customers. On other occasions, The Andersons used third party carriers to transport loads of chemicals from The Andersons's plant to Carus customers.

For the Totalox order delivered on April 13, 2010, purportedly one day earlier than scheduled, The Andersons retained Fetter & Sons to transport the chemical. David Patton, a Town employee, was usually on site at the Millstream lift station when Totalox deliveries were made. On April 13, 2010, Patton was ill and Adrian Taylor, another Town employee, was on vacation, so Plaintiff was assigned by the utility department to attend the delivery and off-loading. The Fetter & Sons driver, Terry Weiser, arrived at Millstream and began off-loading. Plaintiff was joined at the lift station by three other Town employees. Plaintiff and his coworkers moved regularly among the totes to close valves as the system filled. Plaintiff was

---

[2] Before the container configuration, TOTALOX was delivered in the individual portable totes to the central utility office, and Town employees would truck the totes to the lift station.

4

not wearing a respirator during the offloading of Totalox. After the totes had filled, Terry Weiser cleared his line with a charge of air. Under pressure, one or more of the tote valves broke and a significant amount of Totalox was released into the air. Plaintiff was exposed to the chemical. Plaintiff alleges that such exposure to Totalox has caused him to suffer from reactive airways syndrome, which is known as chemically induced asthma or obstructive lung disease.

PROCEDURAL BACKGROUND

Plaintiff initiated this action on August 14, 2012 against Carus, The Andersons, Fetter & Sons, and Terry Weiser, invoking this Court's diversity jurisdiction. Plaintiff also filed a workers' compensation claim against the Town, receiving a modest award.

Fetter & Sons and Terry Weiser settled with Plaintiff on February 6, 2013. Carus and The Andersons proceeded to trial on January 26, 2015. During pre-trial conferences, the parties and this Court discussed extensively what, if anything, the Court would tell the jury regarding Plaintiff's workers' compensation recovery. Ultimately, this Court held that Carus and The Andersons retained the right to make the so-called "empty chair" defense—asserting the Town's negligence was the sole proximate cause of Plaintiff's injuries; however, the parties were not allowed to mention workers' compensation and the Court did not instruct the jury regarding workers' compensation.

Shortly after jury deliberations began, the jury sent out a question: "Why is the Town of Lexington not included in the lawsuit?" In response, and again after a lengthy discussion with the parties, this Court informed the jury that they were to consider only the evidence presented and the Court's instructions on the applicable law.[3] While the jury continued deliberations,

---

[3] Specifically, this Court stated "I am somewhat constrained in how I respond to that, and I have to say this, and you may not be satisfied with this answer, but this is the answer I'm required to give. You have heard the evidence pertinent to this case. You have heard my instructions on the

5

Plaintiff took a voluntary nonsuit as to The Andersons. In turn, the Court amended its verdict form[4] for the jury showing only defendant Carus. The jury returned a verdict for Carus.

Plaintiff promptly filed a motion for a new trial upon the grounds that this Court erred in refusing any argument or jury instructions about workers' compensation, and allowing Carus to argue its empty chair defense placing responsibility for Plaintiff's injuries on the Town.

### NATURE OF THE CONTROVERSY

Significant for purposes of this certification is the Plaintiff's position that, under South Carolina statutory law, only the amount of compensation paid by an employer under workers' compensation is declared to be inadmissible evidence. S.C. CODE ANN. § 42-1-570. Thus, it is Plaintiff's position that issues involving workers' compensation are admissible, only the amount of compensation is inadmissible.

The Plaintiff relies heavily on a 1967 South Carolina Supreme Court case, *Powers v. Temple*. In *Powers*, the court granted plaintiff's request for a new trial when the defendant mentioned the amount of workers' compensation paid, and the plaintiff was not allowed to counter that the money was all paid to the insurance carrier and not the plaintiff. 250 S.C. 149, 165, 156 S.E.2d 759, 766–67 (1967). The *Powers* court stated "[u]pon such new trial, both the

---

law applicable to this case. We have given you a verdict form that walks you through the questions that would will need to answer to properly decide this case. That is all of your concern in this case. That is your—that is your mission in this case is to answer those questions on the verdict form unanimously under the law that I have given you and the evidence that I have allowed you to hear. And that is the length—that is the extent of my response to your question."
[4] The verdict form was another point of disagreement between the parties. Carus and The Andersons requested the Court to place the Town on the verdict form, thereby allowing the jury to apportion fault to the Town. After reviewing S.C. CODE ANN. § 15-38-15 (2005), the Court denied such request and only placed the actual defendants on the form, omitting any non-party or dismissed parties.

matter of Workmen's Compensation and the covenant not to sue should be withheld from the jury in the absence of any factual issue arising thereabout for its determination." *Id.*

The Plaintiff maintains that Carus brought into question, via the empty chair defense, the Town's alleged negligence by offering evidence that the Town was responsible for Plaintiff's injuries for:  (1) using an inadequate storage system to store and off-load Totalox, (2) not informing Plaintiff of the hazards associated with Totalox, and (3) not providing MSDS-based training regarding the safe handling of the product as required by the Occupational Safety & Health Administration's ("OSHA").  Consequently, the Plaintiff argues that fairness necessitates explaining to the jury why he did not sue the Town, the nature of workers' compensation, and the limits on recovery under the South Carolina Workers' Compensation Act.  The Plaintiff believes the jury delivered a defense verdict because the jurors reasoned that Plaintiff already received full compensation for his injuries via workers' compensation.

The Plaintiff also argues that allowing Carus to point blame at the Town was another error made by this Court.  In short, Plaintiff argues that under S.C. CODE ANN. § 15-38-15(D),[5] the Town could never be a "potential tortfeasor" because workers' compensation arises out of contract created by law and not out of any theory of tort.[6]  Accordingly, Plaintiff requested that the Court prohibit any discussion about the Town's negligence, or at a minimum, explain to the jury that it may not assess fault against any employer, as the employer's legal responsibility has been determined in another forum, specifically, the South Carolina Workers' Compensation Commission.

---

[5] (D) A defendant shall retain the right to assert that another potential tortfeasor, whether or not a party, contributed to the alleged injury or damages and/or may be liable for any or all of the damages alleged by any other party.  S.C. CODE ANN. § 15-38-15 (2005).

[6] To support its position, Plaintiff cites *Indemnity Ins. Co. of North America v. Odom*, 237 S.C. 167, 176, 116 S.E.2d 22, 27 (1960) and *Gordon v. Phillips Utilities Inc.*, 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005).

In opposition, Carus argues that evidence bearing on the Town's conduct and legal duties under the OSHA Hazard Communication regulations were directly relevant to its claims and defenses. Carus cites numerous cases from other jurisdictions that allow defendants to argue the empty chair defense notwithstanding disallowing apportionment of fault to immune, non-party employers. Accordingly, Carus asserts that the Court did not err in allowing it to argue the empty chair defense, or charging the jury regarding the sophisticated user doctrine, intervening/superseding cause, and the Town's hazard communication and training obligations under OSHA. Moreover, Carus argues that the exclusivity of the workers' compensation remedy, Plaintiff's receipt of workers' compensation, and the no-fault workers' compensation framework were wholly collateral and irrelevant to the only issue before the jury—whether negligence on Carus's part proximately caused Plaintiff's injury. It is Carus's position that any jury charge or explanation that addressed workers' compensation would confuse, mislead, or distract the jury from the real issue of the case.

## QUESTIONS CERTIFIED

Plaintiff's Motion and Memorandum in Support of Motion for New Trial and Defendant Carus Corporation's Response to Plaintiff's Motion for New Trial briefs this issue of state law and the Court has determined that the answer under existing South Carolina precedent is not clear. Accordingly, pursuant to South Carolina Appellate Court Rule 228, the United States District Court hereby certifies the following questions to the Supreme Court:

1. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may the jury hear an explanation of why the employer is not part of the instant action?

2. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job,

may a defendant argue the empty chair defense and suggest that Plaintiff's employer is the wrongdoer?

3. In connection with Question 2, if a defendant retains the right to argue the empty chair defense against Plaintiff's employer, may a court instruct the jury that an employer's legal responsibility has been determined by another forum, specifically, the South Carolina Workers' Compensation Commission?

4. Under South Carolina law, when a Plaintiff seeks recovery from a person, other than his employer, for an injury sustained on the job, may the Court allow the jury to apportion fault against the non-party employer by placing the name of the employer on the verdict form?

Because the answers to these questions are most probably determinative of the motion for a new trial, this Court takes under advisement the Plaintiff's Motion for a New Trial, ECF No. 247, until the South Carolina Supreme Court answers these certified questions.

IT IS SO ORDERED.

April 24, 2015  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

9